# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHLEY RIOS, an individual, )<br><br>Plaintiff, )<br>vs. )<br><br>BAYER HEALTHCARE )<br>PHARMACEUTICALS, INC., )<br>DOES 1-10. )<br>Defendants. )<br>)<br>)<br>) | Case No.: 7:14-cv-01978-CS<br>ECF Designated<br><br>Severed and Amended Complaint<br><br>Jury Trial Amended |

## INTRODUCTION

Plaintiff  ASHLEY RIOS ("Plaintiff"), by and through her undersigned attorneys, hereby brings this action against the defendant, Bayer Healthcare Pharmaceuticals, Inc. ("Bayer") for personal injuries suffered as a proximate result of Plaintiff' use of the defective and unreasonably dangerous product Mirena® (levonorgestrel-releasing intrauterine system). At all times relevant hereto, Mirena® was manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold by Bayer.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendant is incorporated and has its

principal places of business in states other than the states in which the Plaintiff reside.

2.     This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in this Court, namely In Re: Mirena® IUD Products Liability Litigation, MDL No. 2434, pursuant to CTO-37 transferring this matter from the  Central District of California  where this matter was initiated pursuant to 28 U.S.C. § 1391.

## PARTIES AND CITIZENSHIP

1.     Plaintiff Ashley Rios is a natural person and a resident and citizen of Albuquerque, New Mexico.

2.     Defendant Bayer Healthcare Pharmaceuticals Inc., is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 6 West Belt Road, Wayne, New Jersey 07470.  Defendant Bayer Healthcare Pharmaceuticals, Inc., can be served with process through its registered agent for service of process in California, Corporation Service Company, 2710 Gateway Oaks Dr, Suite I50N, Sacramento, California 95833.

3.     Defendant Bayer Healthcare Pharmaceuticals, Inc. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc.

4.     Berlex Laboratories, Inc. and Berlex, Inc. were integrated into Bayer HealthCare AG and operate as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.

5.     Defendant Bayer Healthcare Pharmaceuticals Inc. is the holder of the approved New Drug Application (NDA) for contraceptive device Mirena®.

6.     Bayer is in the business of designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing prescription drugs and

women's healthcare products, including the intrauterine contraceptive system, Mirena®.

7.     Bayer does business in California, and other states through the sale of Mirena® and other prescription drugs in the state.

8.     At all times relevant, Defendant was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the contraceptive device, Mirena®.

## **FACTS**

9.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

10.     Mirena® is an intrauterine system that is inserted by a healthcare provider during an office visit. Mirena® is aT-shaped polyethylene frame with a steroid reservoir that releases 20 µg/day  of levonorgestrel, a prescription medication used as contraceptive.

12.     The federal Food and Drug Administration (FDA) approved Defendants' New Drug Application for Mirena® in December 2000. Today, more than 2 million women in the United States use Mirena®. It has been used by more than 15 million women worldwide.

13.     The system releases levonorgestrel, a synthetic progestrogen, directly into the uterus for birth control. Defendants admit it is not known exactly how Mirena works," but provide that Mirena® may thicken cervical mucus, thin the uterine lining, inhibit sperm movement and reduce sperm survival to prevent pregnancy.

14.     The Mirena® intrauterine system ("IUS") is designed to be placed within seven (7) days of the first day of menstruation and is approved to remain in

the uterus for up to five (5) years. If continued use is desired after five years, the old system must be discarded and a new one inserted.

15.     The package labeling recommends that Mirena® be used in women who have had at least one child.

16.     Mirena®' s label does not warn about spontaneous migration of the IUS, but only states that migration may occur if the uterus is perforated during insertion of the device.

17.     Mirena®'s label also describes perforation as an "uncommon" event, despite the numerous women who have suffered migration and perforation post insertion, clearly demonstrating this assertion to be false.

18.     Defendant has a history of overstating the efficacy of Mirena® while understating the potential safety concerns.

19.     In or around December 2009, Defendant was contacted by the Department of Health and Human Services' Division of Drug Marketing, Advertising, and Communications (DDMAC) regarding a consumer-directed program entitled "Mirena Simple Style Statements Program," a live presentation designed for "busy moms."  The Simple Style program was presented in a consumer's home or other private by a representative from "Mom Central", a social networking internet site, and Ms. Barb Dehn, a nurse practitioner with Defendants.

20.     This Simple Style program represented that Mirena® use would increase the level of intimacy, romance and emotional satisfaction between sexual partners.  DDMAC determined these claims were unsubstantiated and, in fact, pointed out that Mirena®' s package insert states that at least 5% of clinical trial patients reported a decreased libido after use.

21.     The Simple Style program script also intimated that Mirena® use can help patients "look and feel great." Again, DDMAC noted these claims were

unsubstantiated and that Mirena® can cause a number of side effects, including weight gain, acne, and breast pain or tenderness.

22.     The portion of the Simple Style script regarding risks omitted information about serious conditions, including susceptibility to infections and the possibility of miscarriage if a woman becomes pregnant on Mirena®.

23.     Finally, Defendant falsely claimed that Defendant's product required no compliance with a monthly routine.

## PLAINTIFF SPECIFIC FACTS

24.     Plaintiff Ashley Rios had her physician in New Mexico insert the Mirena® IUS on or about March 2009.

25.      As a result of Plaintiff Ashley Rios' use of Mirena® IUS she suffered migration of the device that resulted in embedment of the IUS and perforation of her uterus. On or about June 7, 2011, Plaintiff Ashley Rios' Mirena® IUS was surgically removed due to the migration, embedment, and perforation of the Mirena®.  Plaintiff Ashley Rios continues to suffer from pain and discomfort as a result.

## FIRST CAUSE OF ACTION:
## DEFECTIVE MANUFACTURING

26.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

27.     Defendant was and is engaged in the business of selling Mirena® in the State of California.

28.     The Mirena® manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold by Defendant was expected to, and did, reach each of the Plaintiff without substantial change in the condition in which it was sold.

29.     Defendants have introduced a product into the stream of commerce which is dangerous and unsafe in that the harm of Mirena® outweighs any benefit derived there from. The unreasonably dangerous nature of Mirena® caused serious harm to Plaintiff.

30.     Defendants manufactured, marketed, promoted and sold a product that was not merchantable and/or reasonably suited to the use intended, and its condition

when sold was the proximate cause of the injuries sustained by the Plaintiff.

31.     As a direct and proximate result of Plaintiff's use of Mirena®, she was forced to undergo surgical removal of the IUS, developed severe pain from the device and had to undergo various procedures.

32.     Defendant placed Mirena® into the stream commerce wanton reckless disregard for the public safety.

33.     Defendant knew and, in fact, advertised and promoted the use of Mirena® despite her failure to test or otherwise determine the safety and efficacy of such use.  As a direct and proximate result of the Defendant's advertising and widespread promotional activity, physicians began commonly prescribing this product as safe and effective.

34.     Despite the fact that evidence existed that the use of Mirena® was dangerous and likely to place users at serious risk to her health, Defendant failed to disclose and warn of the health hazards and risks associated with the Mirena® and in fact acted to deceive the medical community and public at large, including all potential users of Mirena® by promoting it as safe and effective.

35.     Defendant knew or should have known that physicians and other healthcare providers began commonly prescribing this product as a safe and effective contraceptive despite its lack of efficacy and potential for serious permanent side effects.

36.     There are contraceptives on the market with safer alternative designs in that they provide equal or greater efficacy and far less risk.

37.     As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

### SECOND CAUSE OF ACTION:

### DESIGN DEFECT

38.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

39.     Defendants were and are engaged in the business of selling Mirena® the State of California.

40.     The Mirena® manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold by Defendant was expected to, and did, reach Plaintiff without substantial change in the condition in which it was sold.

41.     The foreseeable risks associated with the design or formulation of the Mirena® include, but are not limited to, the fact that the design or formulation of Mirena® is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

42.     Defendant manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold a product that was not merchantable and/or reasonably suited

to the use intended, and its condition when sold was the proximate cause of the injuries sustained by Plaintiff.

43.     As a direct and proximate cause of Plaintiff's use of Mirena®, she was forced to undergo surgical removal of the Mirena®, developed severe pain, and underwent numerous procedures.

44.     Defendant placed Mirena® into the stream of commerce with wanton and reckless disregard for the public safety.

45.     Defendant knew or should have known that physicians and other healthcare providers began commonly prescribing this product as a safe and effective contraceptive despite its lack of efficacy and potential for serious permanent side effects.

46.     There are contraceptives on the market with safer alternative designs that they provide equal or greater efficacy and far less risk.

47.     As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**THIRD CAUSE OF ACTION:**

**NEGLIGENCE**

48.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

49.     Upon information and belief, Defendant failed to use reasonable care in designing Mirena® in that they:

a.  failed to properly and thoroughly test Mirena® before releasing the drug to market;

b.  failed to properly and thoroughly analyze the data resulting from the premarketing tests of Mirena®;

c.  failed to conduct sufficient post-market testing and surveillance of Mirena®;

d.  designed, manufactured, marketed, advertised, distributed, and sold Mirena® to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of Mirena® and without proper instructions to avoid the harm which could foreseeable occur as a result of using the drug

e.  failed to exercise due care when adve11ising and promoting Mirena®; and

f.  negligently continued to manufacture, market, advertise, and distribute Mirena® after Defendants knew or should have known of its adverse effects.

50.  A reasonable manufacturer would or should have known that its risks created by Mirena® are unreasonably greater than that of other contraceptives and that Mirena® has no clinical benefit over such other contraceptives that compensates in whole or part for the increased risk.

51.  As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit,

attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

<u>**FOURTH CAUSE OF ACTION:**</u>

<u>**FAILURE TO WARN**</u>

52.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

53.     Mirena® is a defective and therefore an unreasonably dangerous product, because its labeling fails to adequately warn consumers and prescribers of, among other things, the risk of migration of the product post-insertion, uterine perforation post-insertion, or the possibility that device complications such as migration and perforation may cause abscesses, infections require surgery for removal and/or may necessitate hysterectomy, oophorectomy, and other complications.

54.     Defendants manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold and otherwise released into the stream of commerce the pharmaceutical, Mirena®, and in the course of same, directly advertised or marketed the product to consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of Mirena®.

55.     Mirena® was under the exclusive control of Defendant and was unaccompanied by appropriate warnings regarding all of the risks associated with its use.  The warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer or physicians.  The promotional activities of Defendant further diluted or minimized the warnings given with the product.

56.     Defendant downplayed the serious and dangerous side effects of

Mirena® to encourage sales of the product; consequently, Defendant placed its profits above its customers' safety.

57.     Mirena® was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert Plaintiff to the dangerous risks and reactions associated with it. Even though Defendants knew or should have known of the risks associated with Mirena®, they still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

58.     Plaintiff used Mirena® as intended and as indicated by the package labeling or in a reasonably foreseeable manner.

59.     Plaintiff could not have discovered any defect in Mirena® through the exercise of reasonable care.

60.     Defendant, as manufactures of pharmaceutical drugs, are held to the level of knowledge of an expert in the field and, further, Defendant had knowledge of the dangerous risk and side effects of Mirena®.

61.     Plaintiff did not have the same knowledge as Defendant and no adequate warning was communicated to her physician(s).

62.     Defendant had a continuing duty to warn consumers, including Plaintiff and each of her physicians, and the medical community of the dangers associated with Mirena®, and by negligently and/or wantonly failing to adequately warn of the dangers associated with its use, Defendant breached her duty.

63.     Although Defendant knew, or were reckless in not knowing, of the defective nature of Mirena®, they continued to manufacture, design, formulate, test, package, label, produce, create, made, construct, assemble, market, advertise, distribute and sell Mirena® without providing adequate warnings and instructions

concerning the use of Mirena® so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by Mirena®.

64. As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## **FIFTH CAUSE OF ACTION:**
## **STRICT LIABILITY**

65. Plaintiff incorporate by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

66. Defendant is a manufacturer and/or supplier of Mirena® and are strictly liable to Plaintiff for manufacturing, designing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, marketing, advertising, distributing, selling and placing Mirena® into the stream of commerce.

67. Mirena®, manufactured and/or supplied by Defendant, was defective in design or formulation in that when it left the hands of the manufacturer and/or suppliers, it was unreasonably dangerous. It was more dangerous than an ordinary consumer would expect and more dangerous than other contraceptives.

68. Mirena® was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

69.     Mirena® was also defective due to inadequate warnings or instructions because the manufacturer knew or should have known that Mirena® created, among other things, a risk of perforation and migration and associated infections or conditions and the Defendants failed to adequately warn of these risks.

70.     Mirena® was defective due to inadequate pre-marketing testing.

71.     Defendant failed to provide adequate initial warnings and post-marketing warnings or instructions after the manufacturer and/or supplier knew or should have known of the extreme risks associated with Mirena® and continue to promote Mirena® in the absence of those adequate warnings.

72.     As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all suck other relief as the Court deems appropriate pursuant to the common law and statutory law.

## SIXTH CAUSE OF ACTION:
## BREACH OF IMPLIED WARRANTY

73.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

74.     Defendant manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold Mirena® as safe for use by the public at large, including Plaintiff, who purchased Mirena®. Defendants knew the use for which her product

was intended and impliedly warranted the product to be of merchantable quality, safe and fit for use.

75.     Plaintiff reasonably relied on the skill and judgment of the Defendant, and as such her implied warranty, in using Mirena®.

76.     Contrary to same, Mirena® was not of merchantable quality or safe or for its intended use, because it is unreasonably dangerous and unfit for the ordinary purpose for which it was used.

77.     As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

<u>SEVENTH CAUSE OF ACTION:</u>
<u>BREACH OF EXPRESS WARRANTY</u>

78.     Plaintiff incorporates by reference all other paragraphs complaint as if fully set forth herein, and further allege as follows:

79.     The aforementioned designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing of Mirena® were expressly warranted to be safe by Defendant for Plaintiff and members of the public generally.  At the time of the making of these express warranties, Defendant had knowledge of the foreseeable purposes for which Mirena® was to be used and Defendant warranted Mirena® to be in all respects safe, effective and proper for such purposes.

80.     Mirena® does not conform to these express warranties and representations because Mirena® is not safe or effective and may produce serious side effects.

81.     As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff suffered profound injuries, required medical treatment and incurred medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

**EIGHTH CAUSE OF ACTION:**

**NEGLIGENT MISREPRESENTATION**

82.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

83.     Defendant, having undertaken the designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing of Mirena®, owed a duty to provide accurate and complete information regarding Mirena®.

84.     Defendant falsely represented to Plaintiff that Mirena® was a safe and effective contraceptive option. The representations by Defendant were in fact false, as Mirena® is not safe and is dangerous to the health of its users.

85.     At the time the aforesaid representations were made, Defendant concealed from Plaintiff and her health care providers, information about the propensity of Mirena® to cause great harm. Defendant negligently misrepresented claims regarding the safety and efficacy of Mirena® despite the lack of information regarding same.

86. These misrepresentations were made by Defendant with the intent to induce Plaintiff to use Mirena®, which caused each of her injuries.

87. At the time of Defendant's misrepresentations and omissions, Plaintiff Were ignorant of the falsity of these statements and reasonably believed them to be true.

88. Defendant breached their duties to Plaintiff by providing false, incomplete and/or misleading information regarding her product. Plaintiff reasonably believed Defendant's representations and reasonably relied on the accuracy of those representations when agreeing to treatment with Mirena®.

89. As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## NINTH CAUSE OF ACTION:
## FRAUDULENT MISREPRESENTATION

90. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

91. Defendant, having undertaken the designing, manufacturing, marketing, formulating, testing, packaging, labeling, producing, creating, making, constructing, assembling, advertising, and distributing of Mirena® described herein, owed a duty to provide accurate and complete information regarding Mirena®.

92.   Defendant fraudulently misrepresented material facts and information regarding Mirena® including, but not limited to, its propensity to cause serious physical harm.

93.   At the time of Defendant's fraudulent misrepresentations and omissions, Plaintiff was unaware and ignorant of the falsity of the statements and reasonably believed them to be true.

94.   Defendant knew this information to be false, incomplete and misleading.

95.   Defendant intended to deceive and mislead Plaintiff so that they might rely on these fraudulent misrepresentations.

96.   Plaintiff had a right to rely on and did reasonably rely upon Defendant's deceptive, inaccurate and fraudulent misrepresentations.

97.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff's profound injuries, required medical treatment, and incurred and continue to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## TENTH CAUSE OF ACTION:
## FRAUD BY CONCEALMENT

98.   Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

99.   Defendant had a duty and obligation to disclose to Plaintiff that Mirena® was dangerous and likely to cause serious health consequences to users when used as prescribed.

100. Defendant intentionally, willfully, and maliciously concealed and/or suppressed the facts set forth above from Plaintiff with the intent to defraud her as herein alleged.

101. Neither Plaintiff nor any of her physicians were aware of the facts set forth above, and had they been aware of said facts would not have prescribed this product.

102. As a proximate result of the concealment and/or suppression of the facts set forth above, Plaintiff has proximately sustained damage, as set forth herein.

103. As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff has suffered profound injuries, required medical treatment, and incurred and continues to incur medical and hospital expenses.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## REQUEST FOR PUNITIVE DAMAGES

104. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further allege as follows:

105. At all times relevant herein, Defendant:

     a. knew that Mirena® was dangerous and ineffective;

     b. concealed the dangers and health risks from Plaintiff , physicians, pharmacists, other medical providers, the FDA, and the public at large;

     c. made misrepresentations to Plaintiff, her physicians, pharmacists, hospitals and medical providers and the public in

general as previously stated herein as to the safety and efficacy
of Mirena®; and

d.      with full knowledge the health risks associated with Mirena®
and without adequate warnings of the same, manufactured,
designed, formulated, tested, packaged, labeled, produced,
created, made, constructed, assembled, marketed, advertised,
distributed and sold Mirena® for routine use.

106.   Defendant, by and through officers, directors, managing agents,
authorized sales representatives, employees and/or other agents who engaged in
malicious, fraudulent and oppressive conduct towards Plaintiff and the public,
acted with willful and wanton and/or conscious and reckless disregard for the
safety of Plaintiff and the general public.

107.   As a direct and proximate result of one or more of these wrongful acts
or omissions of the Defendants, Plaintiff suffered profound injuries that required
medical treatment and incurred medical and hospital expenses, for which Plaintiff
have become liable.

WHEREFORE, Plaintiff demands judgment against Defendant for
compensatory, statutory and punitive damages, together with interest, costs of suit,
attorneys' fees and all such other relief as the Court deems appropriate pursuant to
the common law and statutory law.

**PRAYER FOR RELIEF**

Plaintiff demands judgment against Defendant for compensatory, and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

DATED:       June 9, 2014              KABATECK BROWN KELLNER LLP


                                  By: /s/ Lina B. Melidonian
                                        Lina B. Melidonian
                                        Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all Counts and as to all issues.

Respectfully submitted,

DATED:    June 9, 2014            KABATECK BROWN KELLNER LLP


By: /s/ Lina B. Melidonian _____
                        Lina B. Melidonian
                        Attorneys for Plaintiff